458        ABBOTTS' PRACTICE REPORTS.

The New York Life Insurance and Trust Company a. Vanderbilt.

## THE NEW YORK LIFE INSURANCE AND TRUST COMPANY a. VANDERBILT.

*Supreme Court, First District; At Chambers, May,* 1861.

DEBTOR AND CREDITOR.—SURPLUS MONEYS.—COSTS.

Where surplus moneys arise upon the foreclosure of several mortgages, and they are claimed by judgment-creditors having the first liens upon both of two such funds, by a mortgage-creditor having a lien on only one fund, and that lien subsequent to such judgment-creditors, and by also other judgment-creditors having liens upon both funds, but their liens being subsequent both to the first-mentioned judgment-creditors and to the mortgage-creditor,—the judgments prior to the mortgage are to be paid out of the fund not subject to the mortgage; if that fund is not sufficient to pay them, the balance is to be paid prior to the mortgage, out of the fund on which the mortgage is a lien; the mortgage is next entitled to payment out of the surplus funds on which such mortgage was a lien; and the subsequent judgment-creditors are entitled to payment only after the payment of the prior judgment-creditors and the mortgage-creditors.

The fact that the holder of such mortgage took it by assignment after the recovery of the subsequent judgments, does not affect the question of priority.

Where a judgment was recovered upon the check of A., made for the accommodation of B., who indorsed it, and the judgment was paid by B.,—*Held,* that it could form no valid security in the hands of B., or any one representing him; and the fact that A. had received money to be applied to the payment of the check, but neglected to apply it, could not be made available to give such judgment validity, and thus sustain its priority over a subsequent judgment which remained unpaid. Neither the judgment-creditor holding such judgment, nor subsequent judgment-creditors, are affected by such a misapplication of the money.

Allowances in addition to the taxable costs, under the provisions of the Code, cannot be made upon an order disposing of surplus funds arising on foreclosure of a mortgage; but the court has authority to allow to the parties a suitable compensation for costs and disbursements, to be paid out of the funds.

Application for the distribution of surplus funds arising on a sale in several actions of foreclosure between the same parties.

The facts are stated in the opinion of the court.

INGRAHAM, J.—In these cases there are surplus funds remaining after the foreclosure payment of mortgages held by the plaintiffs.

The present application is for the distribution of the surplus funds. As to one-third there is no dispute.

There are judgment-creditors having the first liens by judgments upon two-thirds of both funds.

There is a mortgage-creditor having a lien only on one fund, so far as relates to the two-thirds, and there are other judgment-creditors having liens subsequent to the others on both funds; and the question submitted is as to the order of payment, arising upon exceptions to the trustees' report.

I. The judgments prior to the mortgage are to be paid out of the fund not subject to the mortgage. So far as the rights of these parties are involved, if there was no other creditor, the creditors having the general lien would be required to exhaust the estate remaining in the debtor's hands, before applying to that which had been mortgaged or sold. (Clorner *a.* Dickerson, 9 *Cow.*, 403.) I see no difference in such a case between a mortgage and a conveyance of the lands; so, also, where one creditor has a lien on two funds, out of which he can satisfy his debts, and a subsequent creditor has a lien on only one of them, the first creditor must resort to the fund which the second creditor cannot touch. (Everton *a.* Booth, 19 *Johns.*, 486; Dorr *a.* Shaw, 4 *Johns. Ch.*, 17; Platt *a.* St. Clair, 6 *Hammond*, 233; Keirsted *a.* Avery, 4 *Paige*, 9.)

This is in consonance with the rule that, where a man owns several pieces of property, and has liens upon them, and afterwards sells them, the property last sold must first be resorted to for payment.

In this case the mortgage was a conveyance of that particular portion, leaving at the time the residue with the debtor. The creditors by judgment were under this rule required to resort first, for their protection, to the property not mortgaged.

II. If the property not subject to the mortgage is not enough to *pay the judgments which were a lien when the mortgage was given, then the balance is to be paid prior to the mortgage, out of the fund on which the mortgage was a lien.

III. The mortgage is next entitled to payment out of the surplus funds on which such a mortgage was a lien.

IV. I have stated these rules, without any reference to the judgment-creditors who became such after the giving of the mortgage. I see nothing, however, in their claims to alter the rules above stated.

There can be no doubt as to the principle, that whatever equity may do to aid all the creditors of a debtor in being paid out of the debtor's estate, no rule will be adopted to deprive any creditor of a right to priority of payment which he has acquired. If equity directs a prior lien to be paid out of property not subject to the second lien, it does not take away any security from such prior lien without first being assured that the other fund was sufficient to discharge the whole lien. Whatever rights as to payment then existed could not be taken away to aid a subsequent lien. All that equity could do would be to divide the property in such a way as to insure to the creditors full payment in the order in which they were entitled to be paid. The subsequent judgment-creditors acquired no rights over the prior creditors, whether by general or special lien. It follows, therefore, that the subsequent judgment-creditors are entitled to payment only after the payment of the prior judgment-creditors and the mortgage-creditors (if the property mortgaged was sufficient therefor); and what remains is then applicable to the payment of the judgment subsequently recovered.

There is nothing in the objection that the East River Bank took their assignment of the mortgage after the recovery of the subsequent judgments. There is no imputation as to the *bona fides* of the mortgage originally, and the bank took all the rights with the mortgage that the original mortgage possessed.

Another objection to the referee's report, is as to the question of the priority of a judgment recovered by the East River Bank, and assigned to Daniel H. Baldwin, over the judgment in favor of Stephen Clark.

This judgment was recovered in July, 1858, and Clark's judgment in August, 1858, and under ordinary circumstances, being the oldest lien, was first entitled to payment; but it is contended, on behalf of Clark, that the judgment is not entitled to payment, unless upon conditions claimed by him.

The judgment in favor of the bank was upon a check of E. P. Clark, indorsed by Goff, and for his accommodation, which was discounted by the bank. The check of Clark having been

NEW YORK. 461

The New York Life Insurance and Trust Company *a.* Vanderbilt.

lent to Goff, the payment of the judgment by Goff would not entitle him to any rights upon the check, or to have the same delivered to him for any other purpose than to be cancelled. It would form no valid security in Goff's hands, and he could obtain nothing thereon. When the bank assigned the judgment to Baldwin, they delivered to him the check of Clark, but such delivery gave no other validity to the check than it possessed when held by the bank. The payment of the judgment rendered the check equally valueless in the hands of Baldwin as it was when held by the bank, and neither Goff, nor any one representing Goff, nor any creditor of Goff having rights subsequent to the judgment assigned to Baldwin, could, by payment of the judgment out of Goff's property, obtain any right to recover upon that check, because Baldwin held it as security for the judgments. Their rights in no respect exceeded the right which Goff would have had if he had paid the judgments. The check, upon payment, ceased to be of any validity, and in the hands of Goff, or any other person claiming through him, was without consideration.

The fact that Clark had received money from Campbell and Moody to be applied to the payment of the check, and neglected to do so, but applied the money to the payment of another debt, cannot be made available in this case. That was a matter of which nobody but those who directed the appropriation of the money could take advantage. Neither the bank nor Baldwin were answerable for the misapplication, and the fact that Clark had paid another debt with the money for the benefit of the party paying it, would not give validity to the check of Clark, if it did not possess it; otherwise Campbell and Moody might have a claim against Clark on that account, which must be settled between them; but neither the bank, nor Baldwin, the assignee of the bank, nor the subsequent judgment-creditors, can enforce such application of the money, nor are they in anywise affected thereby.

The exceptions to the referee's reports are not, therefore, in my judgment, well taken, and the reports must in both cases be confirmed, and an order for the payment of the surplus made accordingly.

In regard to the application for allowances, none can be made under the provisions of the Code for a percentage on the amount,

because those provisions are inapplicable to this case.    But the court has authority to allow to the parties a suitable compensation for the costs and disbursements to be paid out of the funds, and such sums are to be paid as follows :

1. To the counsel for the prior judgment-creditors.

2. To the counsel for the East River Bank.

3. After the payment of these claims, to the counsel for the judgment-creditors subsequent thereto.

The amount of the counsel's fees and disbursements will be fixed when the order hereon is settled, which may be on one day's notice.

---

### COIT *a.* BLAND.

*Supreme Court, First District ; General Term, March,* 1861.

DISMISSAL OF COMPLAINT.—FORMER ADJUDICATION.

The dismissal of the complaint under the Code of Procedure, in an action in the nature of what were formerly termed common-law actions, is identical with a · nonsuit under the former practice.

Such a dismissal is no bar to a subsequent action for the same cause.*

---

* The contrary rule prevailed in equity.  A decree dismissing a bill on the merits, without reservation, is a bar to a new bill for the same matter, brought by the same plaintiff, or his representatives, against the same defendant, or his representatives. (Perine *a.* Dunn, 4 *Johns. Ch.*, 140 ; Holmes *a.* Remsen, 7 *Ib.*, 286 ; and see Griswold *a.* Jackson, 2 *Edw.*, 461.)

A decree in equity, upon the merits, dismissing a bill filed to set aside a deed, affirms its validity, and concludes the plaintiff. (Lansing *a.* Russell, 13 *Barb.*, 510 ; to similar effect, Burhans *a.* Van Zandt, 7 *Ib.*, 91.)

So where a bill filed by an heir to contest a will, alleged that although duly executed it was void for illegality ; and one defendant answered, admitting that it was void, if well executed ; and the bill was dismissed on the ground that the will was not illegal ;—*Held*, that the defendant was not precluded, in a subsequent suit, from contesting the due execution of the will. (Mason *a.* Alston, 9 *N. Y.* (5 *Seld.*), 28.)

But where the plaintiff in the former suit has since acquired a legal estate, or legal advantage, and the former defendant files his bill against him for the same matter, the cause is opened on the merits.   (Neafie *a.* Neafie, 7 *Johns. Ch.*, 1.)